SLIP OPINION



Cite as 2016 Ark. App. 520

# ARKANSAS COURT OF APPEALS

DIVISION I
№ CV-16-246

| | |
|---|---|
| IN THE MATTER OF VIRGIE HAYNES KELLY, AN INCAPACITATED PERSON | **Opinion Delivered** NOVEMBER 2, 2016 |
| | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14PR-14-125] |
| | HONORABLE DAVID F. GUTHRIE, JUDGE |
| | APPEAL DISMISSED |

## DAVID M. GLOVER, Judge

Appellant Virgie Kelly appeals the Columbia County Circuit Court's denial of her motion to dismiss guardianships of her person and estate based on Rule 4 of the Arkansas Rules of Civil Procedure and its denial of her requests to set aside or consider void previous orders of the trial court appointing guardians of her person.[1] On appeal, Kelly argues her motion to dismiss should have been granted; she further contends the guardianship order, as initially entered, was not properly supported by expert evidence that she was incompetent or, at the very least, it far exceeded the type of guardianship necessary. We dismiss this appeal as moot because of an agreed order entered ten days after the order from which Kelly has appealed.

---

[1] This order also granted the motion to accept the resignation of John Haynes as coguardian of Kelly's person; this is not an issue on appeal.

This action began in October 2014 when Kelly's brother, H.L. Haynes, petitioned for appointment of a temporary and permanent guardian of her person and estate, alleging each was necessary due to her medical issues. Haynes attached an affidavit from Kelly's physician detailing the medical issues; he asked that he, being Kelly's only sibling and closest living relative, be appointed guardian of her person, and that Farmers Bank & Trust be named the guardian of her estate. The circuit court granted Haynes's petition, appointing him as guardian of Kelly's person and Farmers Bank & Trust as guardian of Kelly's estate in an order filed November 17, 2014.[2] Thereafter, an order was filed April 13, 2015, granting Haynes's request to substitute Brenda Sue Kennedy (Kelly's niece) and John Haynes (Kelly's nephew) as co-guardians of Kelly's person due to H.L. Haynes's health problems.

Two weeks later, on April 28, the co-guardians filed a petition to institutionalize Kelly due to the deterioration of her medical condition. This petition was supported with affidavits from a trust officer and a trust assistant from the bank; Brenda Sue Kennedy; John Haynes's wife, Susan; and Kelly's physician. An order filed May 7, 2015, granted the petition.

Three weeks later, on May 22, Kelly filed a petition requesting the guardianship be set aside and a comprehensive neuropsychological evaluation be performed on her. The co-guardians contested this request. Then, on July 24, 2015, Kelly filed an emergency petition to have her previous motion heard by the circuit court; in the petition, her attorney also requested access to her medical records. The co-guardians again contested this petition,

---

[2]Although the order appointing guardians states Kelly was not present for the hearing, this was an error; the record clearly indicates that she testified at the hearing.

SLIP OPINION


arguing no party with standing brought the petition; the order appointing the guardians for Kelly was filed in November 2014, from which no appeal was taken; and more than ninety days had elapsed since the order appointing guardians was entered, and there was no basis under Rule 60 of the Arkansas Rules of Civil Procedure to set aside the order. In an order filed August 17, 2015, the circuit court authorized a complete mental evaluation for Kelly and ordered that Kelly's counsel be granted access to her medical records. In a petition filed September 21, 2015, Kelly asserted a neuropsychological evaluation had been performed by Dr. Bryan Smith; that Dr. Smith was of the opinion there was a mild level of dementia for which Kelly would need some degree of caregiving support, but Kelly could live at home with caregiver assistance; that while Kelly would need some degree of assistance and oversight, she could be involved in making decisions about her finances and other activities; that the guardianship should be removed or at least limited; that she was being held against her will in a nursing home, at times behind locked doors; and that she objected to her current guardians, fearing the purpose behind the guardianship was to control not only her person but also her estate until her death. The co-guardians responded, objecting to Kelly's interpretation of Dr. Smith's report; denying she was capable of making arrangements for caregiver assistance or of living at home with caregiver assistance; and denying Kelly was being restrained against her will. Kelly filed a motion on October 29, 2015, asking that she be released from the nursing home and be allowed to live in her home with qualified caregivers; the co-guardians asked that the motion be denied.

SLIP OPINION

On November 13, 2015, Kelly filed a motion to dismiss the guardianships on the basis that the summons she received at the start of the proceeding provided she had thirty days to answer the petition, but the guardianship hearing was held only twenty-five days after the petition was filed and served. Kelly argued that defective service deprived the circuit court of jurisdiction and required the action to be dismissed. Kelly further asserted that numerous motions were filed and orders obtained which were not served on her; the petition to substitute guardians was not served on her; her niece and nephew were prohibited under the code from being co-guardians, yet they were still appointed; and no hearing had been set on her motions seeking relief from the commitment-and-guardianship order. The co-guardians responded, asking that Kelly's motion to dismiss be denied; they admitted co-guardians of the person were not permitted to be appointed unless married; and they asserted one of them would submit a resignation. The co-guardians also pleaded the affirmative defenses of waiver, laches, estoppel, unclean hands, and setoff. John Haynes immediately petitioned the circuit court for acceptance of his resignation as co-guardian of the person and for appointment of a successor guardian.

On November 24, 2015, Barbara Erlandson, another of Kelly's nieces, sought and was granted intervention. The circuit court then, on December 7, 2015, entered an order releasing Kelly from confinement in the nursing home, accepting the resignation of Brenda Sue Kennedy as guardian of Kelly's person, and appointing Barbara Erlandson as guardian of Kelly's person.

On December 21, 2015, the circuit court denied Kelly's motion to dismiss and denied



her motion to set aside or consider void the previous orders of the court appointing guardians of Kelly's person. It is this December 21 order that is the subject of this appeal. However, on December 31, 2015, ten days after the trial court had entered the order denying Kelly's motion to dismiss and refusing to set aside the previous orders appointing guardians of Kelly's person, the parties entered into and filed an agreed order. In this order, the parties agreed to continue both the guardianships of Kelly's person and estate, with Barbara Erlandson, Kelly's niece, to be substituted as the guardian of Kelly's person, which Kelly approved; also, the resignations of both John Haynes and Brenda Sue Kennedy as Kelly's co-guardians were approved; and Kelly was to be allowed to return to her home in Erlandson's care. The agreed order further provided if Erlandson should leave or become unavailable for her duties, it was in Kelly's best interest that she be subject to immediate confinement in a facility that offers caretaking assistance, and if Erlandson could not discharge her duties as guardian of Kelly's person, Brenda Sue Kennedy would be appointed temporary guardian until a hearing could be held to appoint a substitute guardian. In the agreed order, Farmers Bank & Trust continued to serve as guardian of Kelly's estate, but arrangements were made for Kelly and Erlandson to have access to a portion of the assets for Kelly's use and benefit. The agreed order set forth Erlandson's compensation for serving as guardian of Kelly's person, as well as provisions for Erlandson to hire caregivers to give her respite from her duties; it provided prohibitions that Kelly not be removed from the court's jurisdiction without prior court approval other than trips to surrounding areas, that Kelly not be allowed access or use of firearms or alcohol, and that Kelly not be allowed to drive or renew her driver's license; and

the agreed order specified arrangements for Kelly's medical appointments.

This agreed order was filed ten days after the December 21 order from which Kelly appeals; the agreed order was not appealed. We note in this order, Kelly agreed to continue the guardianship of her person and estate, and, more specifically, there is no limiting language in the agreed order to indicate it was contingent on the success of her appeal of the December 21 order. Because the parties have agreed to continue the guardianship, setting forth specific parameters for such in the agreed order, we hold Kelly's appeal is moot and must therefore be dismissed.

As a general rule, our appellate courts will not review moot issues. *State v. First Serv. Bank of Greenbrier*, 2013 Ark. 101. A case becomes moot when any judgment rendered would have no practical legal effect on a then existing legal controversy. *Id*. There are two exceptions to the mootness doctrine, neither of which is applicable here. *Id*. Thus, because the parties entered an agreed order after the order from which Kelly brings her appeal, there is no existing legal controversy, and any decision rendered would merely be advisory, which we will not do. We therefore dismiss Kelly's appeal as moot.

Appeal dismissed.

HIXSON and HOOFMAN, JJ., agree.

*Crane, Butler & Phillips. P.A.*, by: *Steve R. Crane*, for appellant.

*Bell & Boyd, PLLC*, by: *Michael W. Boyd* and *Karen Talbot Gean*, for appellees.